PEOPLE v FRAZIER

Docket No. 78-833. Submitted January 2, 1980, at Detroit.—Decided February 21, 1980.

Phillip Frazier and a codefendant, Larry Thomason, were convicted of the delivery of phencyclidine, Wayne Circuit Court, John R. Kirwan, J. Frazier appeals. On appeal, defendant contends that he was denied a fair trial because, on three separate occasions, highly prejudicial evidentiary matters were heard by the jury, that a defendant witness was improperly impeached through extrinsic testimony and that the prosecutor failed to produce an indorsed witness for trial. *Held:*

1. Defendant claims that repeated references to phencyclidine as a narcotic by several prosecution witnesses despite numerous objections and continuing instructions to avoid the word narcotic when referring to phencyclidine were highly prejudicial. The use of the word narcotic during the course of a controlled substance trial is not overly prejudicial even though it is not perfectly accurate. Any error arising from its use would be harmless beyond a reasonable doubt.

2. Discussion of the physical characteristics of phencyclidine before the jury by two prosecution witnesses did not prejudice defendant's right to a fair trial because there was a sufficient reason to admit this type of testimony. Whether phencyclidine was a narcotic was a controversial trial issue and any evidence to clarify this point and minimize jury confusion would be admissible to explain the properties and effects of the use of phencyclidine.

3. An undercover deputy who purchased phencyclidine from defendant testified that defendant was sitting at the kitchen table explaining that this was the same stuff that he had

. REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur 2d, Appeal and.Error §§ 808, 809.

[2] 31 Am Jur 2d, Expert and Opinion Evidence § 18.

[3] 75 Am Jur 2d, Trial §§ 166, 682.

    5 Am Jur 2d, Appeal and Error § 601.

[4] 81 Am Jur 2d, Witnesses §§ 612, 613.

[5] 41 Am Jur 2d, Indictments and Informations §§ 56, 60.

    81 Am Jur 2d, Witnesses § 2.

purchased before, that defendant was just telling him that the weights were good and it would be thirty-seven hundred dollars. Defendant contends that this testimony wrongfully placed before the court a prior sale by the defendant to this deputy. The testimony was quite ambiguous. Furthermore, defense counsel failed to object and it is likely that a cautionary instruction by the court would have cured any error.

4. The trial court did not violate the rule that a witness cannot be impeached on a collateral matter with extrinsic evidence. The witness volunteered the assertion that no phencyclidine was found in a search of his house. Therefore, the prosecutor did not first elicit a response to a question and then seek to rebut it by the use of extrinsic evidence. Furthermore, this impeachment was not on a collateral matter; the existence of phencyclidine in the witness's residence shortly after defendant's arrest was probative of the issue of defendant's guilt of delivery of phencyclidine.

5. The record shows, and the trial court found, that the prosecutor used due diligence in attempting to locate and produce the indorsed witness for trial. Failure to produce the witness was properly excused. There was no showing of a clear abuse of discretion. Therefore, the court's finding of due diligence will not be overturned on appeal.

Affirmed.

1. DRUGS AND NARCOTICS — TRIAL — WITNESSES — EVIDENCE — PHENCYCLIDINE — PREJUDICE — HARMLESS ERROR.

Repeated trial references to phencyclidine as a narcotic by prosecution witnesses despite numerous objections and continuing instructions by the court to avoid the word narcotic when referring to phencyclidine does not prejudice a defendant's right to a fair trial; the use of the word narcotic during the course of a controlled substance trial is not overly prejudicial even though it is not perfectly accurate, and any error arising from its use would be harmless beyond a reasonable doubt.

2. DRUGS AND NARCOTICS — TRIAL — WITNESSES — EVIDENCE — PHENCYCLIDINE — DEFINITIONS — JURY — PREJUDICE.

A defendant's right to a fair trial on a charge of delivery of phencyclidine was not prejudiced by a discussion of the physical characteristics of phencyclidine before a jury by prosecution witnesses where there was a good reason to admit this type of testimony; a controversial issue existed whether phencyclidine was a narcotic and the testimony was admitted to clarify this point and minimize jury confusion by explaining that phency-

clidine is an animal tranquilizer which produces hallucinations in humans, that the drug was not approved for human use and that physical contact with the drug may produce a "contact high".

3. APPEAL AND ERROR — EVIDENCE — FAILURE TO OBJECT — CURE OF ERROR — CAUTIONARY INSTRUCTIONS.

Failure to object to the admission of evidence precludes appellate review where it is likely that a cautionary instruction from the trial judge could have cured any error.

4. CRIMINAL LAW — WITNESSES — IMPEACHMENT — EVIDENCE — REBUTTAL TESTIMONY — EXTRINSIC EVIDENCE — PROBATIVE VALUE — VOLUNTEERED ANSWERS.

A prosecutor cannot first elicit a response to a question and then seek to rebut it by the use of extrinsic evidence; extrinsic evidence cannot be used to impeach a witness on collateral matters; however, the rule does not apply where a witness volunteers an answer on a material matter which is probative of the issue of a defendant's guilt.

5. WITNESSES — CRIMINAL LAW — INDORSED WITNESSES — PROSECUTOR'S DUTY TO PRODUCE — DUE DILIGENCE — COURT'S DISCRETION — APPEAL AND ERROR.

A prosecutor's failure to produce an indorsed witness for trial may be excused where the prosecutor makes a showing of due diligence in searching for the witness, and a trial judge's finding of due diligence will not be overturned on appeal unless a clear abuse of discretion is shown; due diligence in law means doing everything reasonable, not everything possible.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Domnick J. Sorise,* Assistant State Appellate Defender, for defendant on appeal.

Before: T. M. BURNS, P.J., and BASHARA and N. J. KAUFMAN, JJ.

PER CURIAM. Defendant was jury convicted of

the delivery of a controlled substance, to-wit: phencyclidine, MCL 335.341(1)(b); MSA 18.1070(41)(1)(b), in a joint trial held before the Wayne County Circuit Court. Defendant Frazier was sentenced to one year and three months to seven years in prison. His codefendant, Larry Thomason, was also convicted and given the same sentence. Defendant Frazier appeals as of right under GCR 1963, 806.1. Codefendant Thomason does not join in this appeal.

On April 20, 1977, two undercover Wayne County deputies bought a large quantity of phencyclidine from the defendant. The prosecutor's case in chief consisted mainly of the testimony of these and other officers who observed defendant's activities on the night in question. Defendant raises three challenges to his conviction, which we shall address *seriatim.*

Defendant contends that he was denied a fair trial since, on three separate occasions, highly prejudicial evidentiary matters were heard by the jury. The first such incident occurred when several prosecution witnesses repeatedly referred to phencyclidine as a "narcotic" despite numerous objections by defense counsel and continuing instructions by the trial court to avoid the word "narcotic" when referring to phencyclidine. This Court has independently reviewed the lower court transcript and does not believe that the defendant's right to a fair trial was prejudiced. We do not believe that the use of the word "narcotic" during the course of a controlled substance trial is overly prejudicial, even if not perfectly accurate. Any error arising therefrom would be harmless at best. *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974).

The second instance occurred when two prosecu-

tion witnesses discussed the physical characteristics of phencyclidine before the jury thereby allegedly prejudicing defendant's right to a fair trial. This Court finds that there existed sufficient reason to admit this type of testimony. As the previous discussion makes clear, a controversial issue in defendant's trial was whether phencyclidine was a narcotic. The jury may well have been confused. The testimony that defendant complains of served to clarify this point by explaining that phencyclidine was an animal tranquilizer which produces hallucinations in humans, that the drug was not approved for human use by the FDA, and that physical contact with the drug may produce a "contact high".

The last instance occurred with the testimony of one of the undercover deputies who purchased the phencyclidine from the defendant. When asked upon direct examination what the defendant was doing while the deputy was weighing the phencyclidine, the deputy responded, "He was sitting at the kitchen table explaining that this was the same stuff that I had purchased before, just telling me that the weights were good and it would be thirty-seven hundred dollars". The defendant contends that this testimony wrongfully placed before the court a prior sale by the defendant of phencyclidine to this deputy. We disagree. The testimony elicited from the deputy is quite ambiguous. Moreover, this Court notes that the defense counsel failed to make an objection when the testimony was given and it is likely that a cautionary instruction could have cured any error.

Defendant's second principal challenge concerns the impeachment of a defense witness through extrinsic testimony. Tonnie Chavis was called as a defense witness. His direct testimony was that

codefendant Thomason did not leave the Chavis residence with a quantity of phencyclidine on the date in question. During cross-examination, the prosecuting attorney asked witness Chavis if he was a seller of phencyclidine. Defense counsel objected, the witness volunteered to answer, and the trial court decided to take the answer. Witness Chavis did not directly respond to the question but stated that, in the search of his home made shortly after the arrest of both defendants on the day of the purchase, no phencyclidine was found. The trial court then allowed the prosecution, over defense counsel's objections, to call several rebuttal witnesses who testified that phencyclidine was indeed found in the subsequent search of the Chavis residence.

Defendant contends that this was impeachment on a collateral matter with extrinsic evidence and/ or improper rebuttal. We disagree.

It bears note that the prosecutor did not first elicit a response to a question, then seek to rebut it by the use of extrinsic evidence. Contrast, *People v Bennett,* 393 Mich 445; 224 NW2d 840 (1975), *People v Roeder,* 79 Mich App 595; 262 NW2d 872 (1977). Rather, the witness volunteered the assertion that no phencyclidine was found in the subsequent search.

Moreover, this impeachment was on a material matter. The existence of phencyclidine in the Chavis residence shortly after defendant's arrest was probative of the issue of defendant's guilt of delivery of phencyclidine. Thus, the trial court did not violate the rule that a witness cannot be impeached on a collateral matter with extrinsic evidence. See *People v McGillen #1,* 392 Mich 251; 220 NW2d 677 (1974).

Defendant's last challenge concerns the prosecu-

tor's failure to produce an endorsed witness, one Patricia Cowie. Ms. Cowie admitted the undercover deputies into defendant's residence on the date of the phencyclidine purchase. When Patricia Cowie could not be produced for trial, the trial court heard testimony of several witnesses as to the efforts that had been made to locate her, then excused her absence by finding due diligence had been exercised thereby.

This Court reverses a trial court's finding of due diligence only when a clear abuse of discretion is found. *People v Castaneda,* 81 Mich App 453; 265 NW2d 367 (1978), *People v Fournier,* 86 Mich App 768; 273 NW2d 555 (1978), *People v Carter,* 87 Mich App 778; 276 NW2d 493 (1979). The defendant has failed to establish such an abuse. The efforts to secure witness Cowie both before and during trial included: (1) issuance of a warrant, (2) several attempts to serve the warrant at the witness's known and previous address, (3) questioning of neighbors at the witness's known address as to the witness's whereabouts, (4) attempting to talk to the witness's mother, (5) a driver's license LEIN check, (6) a post office change of address check, (7) a check with Social Services, (8) a check of listed phone numbers with the same last name, and (9) a general inquiry made to the neighborhood hospitals, clinics and nursing homes. This Court has defined due diligence as "doing everything reasonable, not everything possible". *People v Fournier, supra,* at 778.

Under these circumstances, this Court is not inclined to find that the trial court abused its discretion.

For the foregoing reasons, the judgment of the lower court is affirmed.