PEOPLE v MORENO

Docket No. 52168. Submitted October 8, 1981, at Lansing.—Decided December 4, 1981.

Jose Moreno was convicted by a jury in Ingham Circuit Court of second-degree murder and was sentenced, Jack W. Warren, J. Defendant appeals. *Held:*

1. The prosecution's cross-examination of defendant did not inject unfounded innuendo into the trial. No error occurred when defendant was asked about an apparent admission he made to a witness whose late endorsement the trial judge had denied.

2. Defendant was not denied a fair trial by reason of the fact that the prosecutor elicited testimony from a detective that defendant's picture was not shown to any witnesses until the detective became personally satisfied that the defendant was the person wanted on the charge in this case. The questions were asked in response to defense counsel's questions concerning the detective's investigation, not in an attempt to persuade the jury to convict defendant because a police officer believed he was guilty.

3. The trial court did not err in ruling that the prosecution had used due diligence when trying to secure the attendance of three missing res gestae witnesses.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 63 Am Jur 2d, Prosecuting Attorneys § 27.
    75 Am Jur 2d, Trial §§ 193, 194.
[3] 31 Am Jur 2d, Expert and Opinion Evidence § 4.
[4] 75 Am Jur 2d, Trial § 261.
    Propriety and effect of prosecuting attorney's argument to jury indicating his belief of knowledge as to guilt of accused—modern cases. 88 ALR3d 449.
[5] 81 Am Jur 2d, Witnesses § 2.
[6] 63 Am Jur 2d, Public Officers and Employees § 282.
[7] 21A Am Jur 2d, Criminal Law §§ 752, 984, 985.
    Modern status of rules and standards in state courts as to adequacy of defense counsel's representation of criminal client. 2 ALR4th 27.
    Incompetency of counsel chosen by accused as affecting validity of conviction. 74 ALR2d 1390.

4. Defendant was not denied effective assistance of counsel. Affirmed.

1. PROSECUTING ATTORNEYS — INNUENDO.

The prosecution may not attempt to inject into criminal proceedings unfounded prejudicial innuendo.

2. PROSECUTING ATTORNEYS — INNUENDO.

A prosecutor's question that is based upon prior testimony is not impermissible injection of innuendo.

3. WITNESSES — CRIMINAL LAW — EVIDENCE — OPINIONS ON GUILT.

A witness may not express an opinion concerning the guilt or innocence of a defendant.

4. PROSECUTING ATTORNEYS — OPINIONS ON GUILT.

It is not permissible for a prosecuting attorney to express his opinion on the defendant's guilt; however, where the prosecutor's remarks are made in response to questions or arguments made by defense counsel, no error occurs.

5. APPEAL — DUE DILIGENCE — WITNESSES — RES GESTAE.

The Court of Appeals will not reverse a trial court's finding of due diligence on the part of a prosecutor to secure the attendance of res gestae witnesses unless a clear abuse of discretion is found.

6. WORDS AND PHRASES — "DUE DILIGENCE".

"Due diligence" is defined as doing everything reasonable, not everything possible.

7. CRIMINAL LAW — DEFENSE COUNSEL — EFFECTIVE ASSISTANCE OF COUNSEL — NEW TRIAL.

A defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscientiously protect his client's interest, undeflected by conflicting considerations; where this standard is met, a new trial might still be required where defense counsel's mistake is of such serious proportions that but for the lawyer's mistake the defendant might not have been convicted.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Peter D. Houk,* Prosecuting Attorney, for the people.

*R. Steven Whalen,* Assistant State Appellate Defender, for defendant on appeal.

Before: ALLEN, P.J., and M. J. KELLY and J. J. KELLEY,* JJ.

PER CURIAM. Defendant, Jose Moreno, was convicted of second-degree murder, MCL 750.317; MSA 28.549, and sentenced to between 12 and 20 years imprisonment. He appeals his conviction as of right, GCR 1963, 806.1.

On March 31, 1979, Eluterio Lopez, Sr., was stabbed to death in a crowded bar in Lansing. Defendant was charged with the murder. During the trial, the prosecutor endorsed 81 witnesses, of whom 78 testified. The prosecution's witnesses testified that they saw defendant hit Lopez, who fell to the floor. A number of the witnesses testified that they saw defendant with a knife and one testified that he saw defendant stab Lopez twice.

In his defense, Moreno argued that there had been two fights in the bar that night. According to defendant, he did participate in a pushing fight but did not stab the decedent. Defendant also presented six character witnesses who vouched for his reputation for truthfulness. After defendant rested, the jury returned a verdict of guilty. Defendant appeals, raising four issues.

Defendant initially claims that he was deprived of a fair trial when the prosecutor asked defendant about an apparent admission he made to Dee McConnel, a witness whose late endorsement the trial judge had denied. During the prosecution's case in chief, the prosecutor called Jesse Miranda. Miranda testified that defendant, apparently drunk, came over to his house late in the evening of March 31, 1979. According to Miranda, defendant admitted that he had been in a fight and that there had been a stabbing. Later in his testimony,

* Circuit judge, sitting on the Court of Appeals by assignment.

he stated that defendant had used the Spanish word Picado which could mean stabbing or pushing. Miranda also stated that McConnel was present during the conversation.

After this testimony, the prosecution moved to endorse Ms. McConnel. Defendant's objection was sustained and McConnel never testified. While cross-examining defendant, the prosecution asked him if McConnel had seen him examining his coat for blood. Defendant denied that he ever examined his coat for blood and also denied that McConnel asked him if he was in a fight. Defense counsel did not object to this line of questioning. On appeal, defendant claims that the prosecution injected prejudicial innuendo into the proceedings by cross-examining defendant about statements made by an unendorsed witness.

The prosecution may not attempt to inject into the proceedings unfounded prejudicial innuendo. *People v Di Paolo,* 366 Mich 394, 396-397; 115 NW2d 78 (1962), *People v Ball,* 33 Mich App 288, 290; 189 NW2d 816 (1971). However, where the prosecutor's question is based upon prior testimony, it is not impermissible injection of innuendo. *People v Williams #2,* 45 Mich App 630, 638; 207 NW2d 180 (1973), *People v Morrin,* 31 Mich App 301, 335; 187 NW2d 434 (1971).

In this case, the prosecution had previously asked Miranda similar questions and had received testimony that defendant had discussed the fight during a conversation at which McConnel was present. The prosecution's cross-examination of defendant did not inject unfounded innuendo into the trial because the questions were based on previous testimony. Therefore, no error occurred.

Defendant next alleges that he was denied a fair trial because the prosecutor elicited testimony

from a detective that defendant's picture was not shown to any witnesses until the detective became personally satisfied that the defendant was the person wanted on the charge in this case. It is impermissible for a witness to express his belief in the guilt or innocence of the defendant. *People v Parks,* 57 Mich App 738, 750; 226 NW2d 710 (1975). It is also impermissible for the prosecutor to express his opinion on defendant's guilt. *People v McCoy,* 392 Mich 231, 240; 220 NW2d 456 (1974), *People v Boske,* 221 Mich 129, 134; 190 NW 656 (1922), *People v Humphreys,* 24 Mich App 411, 419; 180 NW2d 328 (1970). However, where the prosecution's remarks are made in response to questions or arguments made by defense counsel, no error occurs. *People v Pomranky,* 62 Mich App 304, 311; 233 NW2d 263 (1975), *lv den* 397 Mich 823 (1976).

During the cross-examination of Detective Daniel Duncan, the officer in charge of the investigation, defense counsel asked Duncan if he had shown witnesses pictures of other suspects. Duncan admitted that he had not shown witnesses pictures of other suspects. On redirect, the prosecutor attempted to show that Duncan had spoken to a large number of witnesses before identifying Moreno as the defendant. The prosecutor asked Duncan if he had shown defendant's picture after Duncan had "to [his own] satisfaction identified Moreno as the defendant". The court sustained defendant's objection. Later, the prosecutor asked the following questions:

"*Q.* Were you absolutely sure that the name Joe Moreno or Jose Moreno was the name of the person who stabbed Mr. Lopez initially?
"*A.* Not initially.
"*Q.* Do you recall when it was that to your own

personal satisfaction you were satisfied that Jose Moreno was the person that you wanted to seek a warrant for in this matter? When did that occur in this investigation?

\* \* \*

"*Mr. McLellan:* Your Honor—

"*The Court:* We'll take the answer.

"*The Witness:* For my own personal satisfaction, I was satisfied when I had contact in the early morning hours of April the 1st, 1979, on the 5th floor of the Lansing Police Department with one Carlos Garza.

"*Q. (By Mr. McLellan, continuing):* But did you conduct your investigation nonetheless?

"*A.* I did.

"*Q.* Did you continue to question witnesses and other people with regard to information they might have?

"*A.* Yes, sir. I felt, at the time of my contact with Carlos Garza, I felt sure in my own mind that I had identified the individual but I did not feel at that time I had enough information to seek a warrant, a criminal warrant through the prosecutor's office for that individual, and I continued in my investigation.

"*Q.* Do you recall when you ultimately sought that warrant?

"*A.* I believe it was on Monday the 3rd or 4th of April. I'm not positive, sir, I'd have to refer to my report."

These questions were asked in response to defense counsel's questions concerning Duncan's investigation. They were not elicited in an attempt to persuade the jury to convict defendant because a police officer believed he was guilty. Furthermore, the questions and answers were not attempts to express the prosecution's belief in defendant's guilt but were, rather, questions about Duncan's investigation. They do not compare to the prosecution's comments in *McCoy, supra, Boske, supra,* and *Humphreys, supra,* and do not require reversal of defendant's conviction.

Defendant's third claim of error is that the trial court erred when it ruled that the prosecution had used due diligence when trying to secure the attendance of three missing res gestae witnesses. This Court will not reverse a trial court's finding of due diligence unless a clear abuse of discretion is found. *People v Sullivan,* 97 Mich App 488, 493; 296 NW2d 81 (1980), *People v Frazier,* 95 Mich App 570, 576; 291 NW2d 125 (1980). Due diligence is defined as doing everything reasonable, not everything possible. *Sullivan, supra,* 493, *Frazier, supra,* 576.

In this case, the prosecution used due diligence in attempting to secure the attendance of the three missing witnesses. The police interviewed a number of people in an effort to discover the whereabouts of the missing witnesses. Criminal records, traffic records, police files, telephone books, social service department files, post office records, city directories and the police department's LEIN system were all used in an attempt to locate the witnesses. The police also interviewed another missing witness's family and discovered that the witness was last known to be in Georgia. Checks with the FBI and a number of law enforcement agencies in Georgia failed to reveal the whereabouts of the missing witness. These are only a few of the methods used in trying to secure the presence of the three witnesses. The trial court did not abuse its discretion when it found that the prosecution used due diligence to secure the attendance of the three witnesses.

Defendant's final claim of error is that he was denied effective assistance of counsel. The law requires that a defense counsel must perform at least as well as a lawyer with ordinary training and skill in the criminal law and must conscien-

tiously protect his client's interests, undeflected by conflicting considerations. *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976). Where this standard is met, a new trial might still be required where defense counsel's mistake is of such serious proportions that but for the lawyer's mistake the defendant might not have been convicted. *Garcia, supra,* 266, *People v Degraffenreid,* 19 Mich App 702, 716; 173 NW2d 317 (1969).

A review of the record demonstrates that defense counsel's performance met the constitutional standard announced in *Garcia, supra.* However, defendant alleges that his counsel made serious errors by not cross-examining three witnesses to show their bias against defendant and erred when he failed to require the attendance of certain witnesses.

During the trial, defendant objected to the way his counsel was conducting the cross-examination of three witnesses. According to Moreno, his counsel could have cross-examined one witness about his bias against defendant based on the witness's belief that Moreno caused his father's death. The trial court, out of the presence of the jury, questioned defendant concerning his claim. Defendant stated that the witness's father had sold marijuana for defendant and had died of a drug overdose. Upon further questioning by the trial court, defendant admitted that defense counsel did not err when he failed to cross-examine the witness about the prejudicial matter. As for the other two witnesses, defense counsel cross-examined them concerning the defense's theory but not about possible bias towards defendant. The cross-examination of these witnesses was trial strategy which this Court will not question on review.

Finally, defendant claims that defense counsel

erred when he refused the court's offer to subpoena some prospective alibi witnesses. However, the record reveals that these prospective alibi witnesses' testimony would not have placed defendant at another bar during the decedent's murder. Therefore, it was a matter of trial strategy not to call these prospective witnesses.

Defendant's conviction for second-degree murder is affirmed.