PEOPLE v BASKIN

Docket No. 80409. Submitted May 21, 1985, at Marquette.—Decided
   September 4, 1985.

   Defendant, Wesley Baskin, an inmate at Marquette Branch
   Prison, was convicted of two counts of assault on a prison
   employee and, subsequently, of being an habitual offender. The
   convictions arose from an altercation involving defendant, two
   other inmates, and prison guards. Defendant was sentenced to
   two concurrent terms of imprisonment to run consecutively to
   the term he was then serving, Marquette Circuit Court, Ray-
   mond J. Jason, J. Defendant appealed, alleging several errors.
   *Held:*
      1. Defendant's pretrial request for the production of certain
   res gestae witnesses and his request for a jury instruction
   concerning the prosecutor's failure to indorse the requested res
   gestae witnesses were denied by the trial court. The trial court

REFERENCES FOR POINTS IN HEADNOTES
[1-6] Am Jur 2d, Indictment and Information §§ 56, 60.
[2] Am Jur 2d, Appeal and Error §§ 545 *et seq.*
[7] Am Jur 2d, Depositions and Discovery §§ 400 *et seq.*
   Accused's right to discovery or inspection of records of prior com-
      plaints against, or similar personnel records of, peace officer
      involved in the case. 86 ALR3d 1170
[8] Am Jur 2d, Criminal Law §§ 243 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under Former
      Jeopardy.
[9] Am Jur 2d, Trial §§ 876-882.
   Modern status of law regarding cure of error, in instruction as to
      one offense, by conviction of higher or lesser offense. 15 ALR4th
      118.
[10] Am Jur 2d, Penal and Correctional Institutions §§ 17 *et seq.*
   Liability of prison authorities for injury to prisoner directly caused
      by assault by other prisoner. 41 ALR3d 1021.
[11] Am Jur 2d, Trial §§ 45 *et seq.*
   See the annotations in the ALR3d/4th Quick Index under Presence
      or Absence.
[12] Am Jur 2d, Criminal Law § 700.
   Propriety and prejudicial effect of gagging, shackling, or otherwise
      physically restraining accused during course of state criminal
      trial. 90 ALR3d 17.

clearly erred in ruling that an Officer Smith was not a res gestae witness; the evidence indicates otherwise. Two inmates whom defendant alleges were involved in a plot to kill defendant were called by the defense and testified. They were not, however, res gestae witnesses, and the prosecutor was not required to produce them at trial.

2. The trial court abused its discretion in holding that the prosecutor had used due diligence in his efforts to determine which of the other inmates housed in the area where the altercation occurred were res gestae witnesses to the crime. The court's ruling impermissibly shifted the burden of identifying those witnesses to the defendant.

3. The trial court abused its discretion by denying defendant's request for discovery of Officer Smith's personnel file. The court should have made an *in camera* inspection of the file to determine the relevance to the defense of any information therein before making its decision to deny discovery.

4. Defendant's convictions of both assault on a prison employee and of being an habitual offender, and the enhancement of his sentences, do not constitute multiple punishments for the same offense.

5. Defendant's request for a jury instruction on the lesser included misdemeanor offense of assault and battery was properly denied, as the evidence on the elements differentiating that crime from the charged offense was not sufficiently in dispute to support submission of the question to the jury.

6. Defendant was not prejudiced by his absence at in-chambers conferences concerning jury instructions and objections to the prosecutor's closing argument.

7. The trial court erred in ordering defendant to be shackled during trial. There was no evidence which would justify the trial court's professed concern for the safety of those present in the courtroom. Further, this error was not harmless beyond a reasonable doubt.

Reversed and remanded.

1. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

A res gestae witness is one who was witness to some event in the continuum of a criminal transaction and whose testimony will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense; one need not be an actual eyewitness in order to be a res gestae witness if his or her testimony would assist in developing a full disclosure of the facts and whose testimony may be necessary to protect the accused from being victimized by false accusations.

2. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — PRESERVING QUESTION.

The prosecutor has an affirmative duty to indorse and produce at trial all res gestae witnesses; however, if the prosecutor does not comply it is incumbent upon the defendant to make a motion for an evidentiary hearing in the trial court in order to preserve the issue for appeal.

3. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

A trial court's decision concerning the status of an alleged res gestae witness will not be overturned unless clearly erroneous.

4. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — DUE DILIGENCE.

A trial court's findings that a prosecutor used due diligence in his efforts to identify and indorse res gestae witnesses will not be overturned absent an abuse of discretion.

5. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES.

The purposes of requiring the production of res gestae witnesses include: (1) protecting the defendant against false accusation; (2) preventing suppression of testimony favorable to the accused; and (3) ensuring the disclosure of all the circumstances.

6. CRIMINAL LAW — WITNESSES — RES GESTAE WITNESSES — PRESUMPTIONS.

A rebuttable presumption exists that persons present at the time and place of a crime are res gestae witnesses.

7. CRIMINAL LAW — DISCOVERY.

Information sought by a defendant is discoverable when, in the sound discretion of the trial court, the information sought is admissible into evidence and the suppression of it might result in a failure of justice; the burden is on the defense to establish specific facts indicating that such information is necessary to a preparation of the defense and in the interests of a fair trial.

8. CRIMINAL LAW — DOUBLE JEOPARDY — LEGISLATIVE INTENT.

The legislative intent is determinative in a decision as to whether a defendant's punishment violates the protection against double jeopardy because it constitutes multiple punishments for the same crime.

9. CRIMINAL LAW — JURY INSTRUCTIONS — LESSER INCLUDED OFFENSES — MISDEMEANORS.

The decision to grant or deny a requested jury instruction on a lesser included offense will be reversed on appeal only upon a finding of a clear abuse of discretion; an instruction on a lesser

included misdemeanor is appropriate only where: (1) there is a proper request; (2) there is an appropriate relationship between the misdemeanor and the charged offense; (3) the requested misdemeanor instruction is supported by a rational view of the evidence adduced at trial; (4) the defendant has adequate notice, if the prosecutor requests the instruction; and (5) the requested instruction does not result in undue confusion or some other injustice.

10. ASSAULT AND BATTERY — ASSAULT ON PRISON EMPLOYEE.

The crime of assault and battery is a cognate lesser offense of assault of a prison employee.

11. ASSAULT AND BATTERY — DEFENDANT'S PRESENCE AT TRIAL.

A defendant has a right to be present at his trial; his presence at an in-chambers conference, however, is required only where his substantial rights might be affected (MCL 768.3; MSA 28.1026).

12. CRIMINAL LAW — SHACKLING OF DEFENDANT.

A defendant may be shackled during his trial only where it is necessary in order to prevent the escape of the defendant, to prevent the defendant from injuring those in the courtroom, or to secure a quiet and peaceable trial.

*Mark P. Stevens,* for defendant on appeal.

Before: CYNAR, P.J., and HOOD and R. L. OL-ZARK,* JJ.

PER CURIAM.

## FACTS

Defendant appeals from his jury conviction of two counts of assault on a prison employee, MCL 750.197c; MSA 28.394(3). As a result of these convictions and a subsequent conviction as a habitual offender pursuant to MCL 769.10; MSA 28.1082, defendant was sentenced to two concurrent terms of from 3 to 6 years imprisonment to run consecutively to his prior sentence.

Defendant's convictions stem from an incident

_____

* Circuit judge, sitting on the Court of Appeals by assignment.

occurring on February 14, 1983, at the Marquette Branch Prison. On that date, defendant, a Marquette prisoner, became involved in an altercation with two prison guards. Defendant claimed at trial that he was acting in self-defense.

According to defendant, he had learned through another inmate that one of the prison guards, Officer Richard Smith, had placed a contract on his life. At the time of the incident, defendant was returning from the yard when a scuffle broke out between Officer Smith and two other inmates. Then the defendant felt someone hitting him from behind. Defendant perceived this as the predicted assault on his life and began to fight. He then realized he was fighting two prison guards. Defendant stopped fighting when more prison guards responded to the scene.

Officer Martin testified for the prosecution that as he was escorting several inmates to their cells he was jumped from behind and assaulted by an unknown number of inmates. Martin identified defendant as one of his assailants. Officer Bellhorn testified that he saw defendant hitting Martin and, when he tried to stop defendant, defendant assaulted him.

Defendant raises several points of claimed error on appeal.

I

Defendant first contends that he was denied his right to a fair trial because the prosecutor failed to endorse certain res gestae witnesses, specifically, Officer Richard Smith, inmates John Brown and Eddie Julian, and other prison inmates who may have witnessed the incident.

A res gestae witness has been described as " 'an eyewitness to some event in the continuum of a criminal transaction and [one] whose testimony

will aid in developing a full disclosure of the facts surrounding the alleged commission of the charged offense' ". *People v Carter,* 415 Mich 558, 591; 330 NW2d 315 (1982), quoting *People v Hadley,* 67 Mich App 688, 690; 242 NW2d 32 (1976). One need not be an actual eyewitness in order to be a res gestae witness if his or her testimony would assist in developing a full disclosure of the facts. *People v Buschard,* 109 Mich App 306, 312; 311 NW2d 759 (1981); *People v Abdo,* 81 Mich App 635, 643-644; 265 NW2d 779 (1978), *lv den* 405 Mich 805 (1979). An affirmative duty resides in the people to endorse and produce at trial all res gestae witnesses. MCL 767.40; MSA 28.980. If the prosecutor does not comply, however, it is incumbent upon the defendant to move for an evidentiary hearing before, during, or after a new trial, in order to perfect the issue for appeal. *People v Robinson,* 390 Mich 629, 634; 213 NW2d 106 (1973); *People v Pearson,* 404 Mich 698, 723; 273 NW2d 856 (1979).

Defendant requested the production of these witnesses before trial and also requested a jury instruction concerning the prosecutor's failure to endorse the requested res gestae witnesses. The trial court ruled that Officer Smith was not a res gestae witness and denied defendant's requests. The trial court also decided that the prosecution's failure to produce those prison inmates who may have been res gestae witnesses was excused by its diligent but futile efforts to locate and produce them. We discuss the merits of each decision separately.

### Officer Richard Smith

The decision of a trial court concerning the status of an alleged res gestae witness will not be overturned unless clearly erroneous. *People v Abrego,* 72 Mich App 176; 249 NW2d 345 (1976);

*People v Harrison,* 44 Mich App 578; 205 NW2d 900 (1973). In this case, the basis for the court's decision that Officer Smith was not a res gestae witness was its finding that Smith did not see the assault as it happened because Smith was around the corner and was rendered semi-conscious if not unconscious at the time as a result of the beating that he took from another inmate. We find this decision clearly erroneous and unsupported by the record.

All three prison guards involved in this case testified at the preliminary examination that, at the time of the incident, the inmates and the three guards were on the first gallery of the cellblock. Officer Smith was located approximately three-fourths of the way down the gallery toward the far east end, Officer Martin was in the middle and Officer Bellhorn was at the west end. Officer Smith *was not* around the corner as the trial court indicated. Further, Smith testified that he was not rendered unconscious until 2 or 3 minutes after the assault on him began. Therefore, Smith did have some ability to observe the incident prior to being rendered unconscious.

### John Brown and Eddie Julian

While defendant does not contend that John Brown and Eddie Julian were eyewitnesses to the assault at issue, he does contend that their involvement with this incident qualifies them as res gestae witnesses. Both individuals were called by the defense. Eddie Julian testified that Officer Smith had offered him a contract to kill defendant and two other inmates. Julian testified that he asked John Brown to do it instead. John Brown testified that two days before the assault in question, he sent a note to another inmate, Kenny Smith, informing Smith that Officer Smith had

entered into a contract to kill Smith and defendant.

On various occasions, this Court has classified a witness as a res gestae witness even though the witness did not personally observe the act in question. See *e.g., People v Harrison, supra,* p 592; *People v Williams #2,* 45 Mich App 630, 635; 207 NW2d 180 (1973). The res gestae rule encompasses not only eyewitnesses but witnesses whose testimony may aid the making of a fair presentation of the res gestae of the crime charged and may be necessary to protect the accused from being victimized by false accusations. *People v Fudge,* 66 Mich App 625, 629; 239 NW2d 686 (1976).

Here, neither Brown nor Julian witnessed the assault. Nor did they have any contact with the defendant which was reasonably contemporaneous with the crime or which tended to show the state of mind with which the criminal act was done. *Cf., People v Williams #2, supra.* Indeed, defendant does not argue that Brown and Julian knew that defendant had knowledge of the alleged contract. At most, Brown and Julian could testify as to the existence of the contract and Brown could corroborate the existence of the letter he worte to Smith. But this evidence does not go to the actual res gestae of the crime. Therefore, the prosecutor was not required to produce them at trial.

### Cohen, Paige and the Other Non-Accomplice Inmates

Defendant further argues that the failure to endorse those other inmates who were housed in Block B and allegedly observed the incident was also error. When defense counsel raised this issue prior to trial, the prosecutor agreed to deliver a box of form letters to the prison requesting inmates to contact the prosecutor's office if they had

any information about the incident. While the prosecutor fulfilled this agreement, no inmates came forth.

Subsequently, defense counsel brought another motion to endorse these alleged res gestae witnesses. At that time, the trial court declined to order the prosecutor to interview each inmate to substantiate who was or was not a res gestae witness, stating that the delivery of the form letters constituted a sufficiently reasonable effort in light of the generalization that inmates "dummy up" and in this case refused to cooperate with the prosecutor. The trial court did, however, order the prosecutor to provide defense counsel with a list of those inmates housed in the cellblock at that time so that defense counsel might contact the inmates to determine who among them were res gestae witnesses and then make a motion to endorse them

After both sides had entered their proofs at trial, defense counsel requested that a "missing witness" instruction be given to the jury concerning the prosecutor's failure to produce inmates Paige, Cohen, Jones and those unidentified inmates who witnessed the incident. The trial judge refused to give the instruction because defendant never requested the endorsement of additional witnesses after the prosecutor had supplied defense counsel with the list of those inmates housed in the cellblock at the time.

In essence, the trial judge ruled that the prosecution had used due diligence in its efforts to determine which inmates were res gestae witness and, therefore, was excused from having these witnesses endorsed. This Court will not overturn a trial judge's findings of due diligence on appeal unless an abuse of discretion is shown. *People v Castaneda,* 81 Mich App 453, 460; 265 NW2d 367

(1978). We find that an abuse of discretion has been shown here.

The purposes of requiring the production of res gestae witnesses include: (1) protecting the defendant against false accusation; (2) preventing suppression of testimony favorable to the accused; and (3) ensuring the disclosure of all the circumstances. *People v Norwood,* 123 Mich App 287, 294; 333 NW2d 255 (1983), *lv den* 417 Mich 1006 (1983). While the people are not under an obligation to endorse and produce unknown witnesses, the people are required to exercise due diligence in seeking to ascertain the identities of any witnesses. *People v Harris,* 127 Mich App 538, 543; 339 NW2d 45 (1983). "Due diligence is defined as doing everything reasonable, not everything possible." *People v LeFlore (After Remand).* 122 Mich App 314, 319; 333 NW2d 47 (1983); *People v Moreno,* 112 Mich App 631, 637; 317 NW2d 201 (1981).

We believe the trial court impermissibly shifted the burden of identifying those inmates who were res gestae witnesses to the defendant. The trial court's reasoning that "inmates generally 'dummy' up and don't say anything" to the prosecutor's office is insufficient in the absence of any evidence suggesting that personal interviews ended in such a result.

While we note that originally defendant's request encompassed the entire number of inmates housed in Block B, a hundred or so, the request was modified to include only approximately 30 inmates housed on the gallery at the time when the incident occurred. These inmates most probably did see something. Because a rebuttable presumption exists that persons present at the time and place of a crime are res gestae witnesses, *People v Abrego,* 72 Mich App 176, 179; 249 NW2d 345 (1976), in lieu of conducting personal inter-

views with each inmate, we believe the more prudent practice would be for the prosecutor to conditionally endorse those inmates housed at the time near the scene of the incident. The witness may then be subject to voir dire and the question of whether or not he is a res gestae witness ruled on more knowingly. See *People v Harrison, supra.*

Nor does the fact that defendant himself called some inmates of this category obviate the error. An exception to the rule placing the burden of producing res gestae witnesses on the prosecution is when the witness's identity is known *only* to the defendant. *People v Norwood, supra,* p 294, citing *People v Gillam,* 93 Mich App 548; 286 NW2d 890 (1979). Here, the record reveals that the prosecutor was or should have been aware of the identities of these witnesses through the testimony of Daniel Slee given at the preliminary examination.

We further note that adherence to the res gestae rule is important not only to secure defendant the benefit of cross-examination but also because the credibility of a witness may be detracted from or enhanced, depending on which party calls the witness. *People v Harrison, supra.* Where as here the testimony is essentially the words of the prison guards against the words of the prisoners, credibility is a paramount factor.

### The Remedy

According to the Supreme Court in *People v Pearson,* 404 Mich 698, 724; 273 NW2d 856 (1979), the key issue in determining the proper remedy when the prosecutor has failed to fulfill his responsibilities in endorsing and producing res gestae witnesses is whether the defendant has been prejudiced. The defendant is presumed prejudiced until the prosecutor can establish the contrary. Because we reverse and remand for a new trial on other

grounds, see Issue VI, *infra,* we no not specify any steps to be taken prior to a new trial.

## II

Defendant also contends that the trial court abused its discretion by denying defendant's request for discovery of Officer Smith's personnel file. We agree that defendant's discovery request should have been granted subject to certain conditions.

At first, defendant's discovery request was broadly phrased to seek all personnel files, memos or records pertaining to Officer Richard Smith and any other prison guard who was directly involved in the incident. However, defense counsel amended this request to include complaints by inmates and internal memos regarding any violence or threat of violence by those officers toward inmates, specifically black inmates. Defendant contended that this information would assist in preparation of his self-defense argument.

The trial judge denied defendant's amended discovery request, ruling that the request lacked sufficient specificity and that information in the file could not be relevant to defendant's defense. We reverse this decision.

In *People v Walton,* 71 Mich App 478, 481-482; 247 NW2d 378 (1976), this Court wrote:

"Traditionally, information sought by a defendant is discoverable when, in the sound discretion of the trial court, the object sought is admissible into evidence and the suppression of it might result in a failure of justice. *People v Maranian,* 359 Mich 361; 102 NW2d 568 (1960), *People v Brocato,* 17 Mich App 277; 169 NW2d 483 (1969). But, discovery has not been limited exclusively to whether the information sought was admissible at trial. Rather, the focus has shifted to whether fundamental fairness to the defendant, in preparing his

defense, requires that he have access to the requested information."

While this Court has noted that "[t]he trend in Michigan and other states is toward broader criminal discovery", *People v Browning (On Reh)*, 108 Mich App 281, 307; 310 NW2d 365 (1981), the burden still remains on the defense to establish specific facts "indicating that such information is necessary to a preparation of its defense and in the interests of a fair trial, and not simply a part of a fishing expedition". *People v Maranian*, 359 Mich 361, 368; 102 NW2d 568 (1960). Thus, where it had been determined through an *in camera* inspection of the information in the records sought that the same information could have been obtained on cross-examination, the discovery request was denied on the basis of an insufficient showing of need. *People v Maranian, supra.*

In the case at bar, no *in camera* inspection of the files sought was conducted by the trial court before it made its decision to deny defendant's discovery request. We find this to constitute an abuse of discretion. The defendant amended his request to make it as specific as possible under the circumstances. We also believe that the file might have yielded information that would have been helpful to defendant's defense. Further, it is doubtful that this information could have been obtained on cross-examination.

"[F]airness to the defendant and an adequate opportunity to prepare a defense, including preparation for cross-examination of witnesses, requires that the defendant be given access to all relevant information." *People v Walton, supra*, p 484. Without an *in camera* inspection of the records sought, we find it difficult to be certain that the inspection would yield no relevant information. Therefore, on

remand we order the trial court to conduct an *in camera* hearing to determine what portion, if any, of this file is relevant to the defendant's defense.

## III

Defendant was convicted of assault on an employee of a place of confinement, MCL 750.197c; MSA 28.394(3). His sentence was then enhanced under the habitual offender statute due to the fact that he had a prior felony conviction. MCL 769.10; MSA 28.2082. Defendant now contends that his convictions placed him in double jeopardy.

The Double Jeopardy Clauses in both the United States[1] and Michigan[2] Constitutions protect against (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *People v Robideau,* 419 Mich 458, 468; 355 NW2d 592 (1984), citing *North Carolina v Pearce,* 395 US 711, 717; 89 S Ct 2072; 23 L Ed 2d 656 (1969). The issue in the case at bar concerns the third category of protections.

In determining whether a defendant's punishment violates the protection against double jeopardy because it constitutes multiple punishments for the same crime, our Supreme Court has held that legislative intent is determinative. *People v Robideau, supra,* p 485.

As an aid in determining legislative intent, the Supreme Court developed a test in *Gavieres v United States,* 220 US 338, 342; 31 S Ct 421; 55 L Ed 489 (1911), now known as the *Blockburger* test because of its employment in *Blockburger v United States,* 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932):

---

[1] US Const, AM V.
[2] Const, 1963, art 1, § 15.

"The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."

However, in *People v Robideau, supra,* p 486, the Michigan Supreme Court rejected the *Blockburger* test in favor of a more traditional test for determining the intent of the Legislature, that is, by looking to the subject, language and history of the statutes.

Defendant argues that because the Legislature elevated the conduct of assault on a prison guard to a felony, it must not have intended to allow the crime to be again supplemented under the habitual offender statute. Therefore, defendant contends, the imposition of the harsher sentence upon defendant violated legislative intent and the double jeopardy clause.

In *People v Shotwell,* 352 Mich 42, 45-46; 88 NW2d 313 (1958), a similar argument was advanced in connection with a conviction under the habitual offender statute stemming from a conviction for escaping from prison. The Supreme Court rejected the argument, however, on the following basis:

"[W]e further note that substantive crimes are created and defined in our penal code whereas the statutory provisions for second and subsequent offenders are found in our code of criminal procedure. This is some indication, we think, that the Legislature did not intend to make a separate substantive crime out of being a habitual criminal but rather, for deterrent purposes, intended to augment the punishment for second or subsequent felonies. Since the Legislature did not except escaping prison from our second offender statute we can only infer that it intended the latter statute to apply to

all felonies. This we held with little if any discussion in *In re Wilson,* 295 Mich 179 [294 NW 145 (1940)]." 352 Mich 46.

We find this reasoning dispositive of the issue at bar. Hence, we find no violation of the double jeopardy clause under this analysis.[3]

## IV

Defendant also contends that the trial judge erred in refusing to instruct the jury on the lesser included misdemeanor of assault and battery because sufficient evidence was presented at trial to establish that defendant did not intend or did not know that he was striking a prison guard at the time he committed the assault in question. We disagree.

The decision to grant or deny a requested instruction on a lesser included offense will be reversed on appeal only upon a finding of a clear abuse of discretion. *People v Stephens,* 416 Mich 252, 265; 330 NW2d 675 (1982). In general, "[w]henever an adequate request for an appropri-

[3] On appeal, defendant also offers a "factual" analysis of this issue. In *People v Wakeford,* 418 Mich 95, 105-106, fn 9; 341 NW2d 68 (1983), the Supreme Court explained the difference between "legal" and "factual" double jeopardy:

"The expression 'legal' double jeopardy is used * * * to distinguish it * * * from 'factual' double jeopardy * * *. 'Legal' double jeopardy is recognized under both the federal and state constitutions, while the notion of 'factual' double jeopardy, while not denominated as such, is a concept created by this Court in construing the Michigan Constitution in *People v Martin,* 398 Mich 303; 247 NW2d 303 (1976). 'Legal' double jeopardy ascertains whether two offenses are the 'same offense'. 'Factual' double jeopardy determines whether, despite the violation of two separate and distinct statutes, the Legislature nevertheless intended that only a single conviction result. * * * [T]he doctrines are not really separate or distinct, since both ultimately require ascertaining and enforcing the intent of the Legislature."

However, the Supreme Court in *People v Robideau, supra,* p 485, disavowed the factual test, ruling that the intent of the Legislature is determinative. Therefore, we decline to apply defendant's "factual analysis" to this issue.

ate misdemeanor instruction is supported by a rational view of the evidence adduced at trial, the trial judge shall give the requested instruction unless to do so would result in a violation of due process, undue confusion, or some other injustice". *People v Stephens, supra,* p 255.

The following conditions must be presented for the instruction on a misdemeanor to be appropriate: (1) there must be a proper request; (2) there must be an appropriate relationship between the charged offense and the requested misdemeanor; (3) the requested misdemeanor instruction must be supported by a rational view of the evidence adduced at trial; (4) if the prosecutor requests the instruction, the defendant must have adequate notice of it; and (5) requested instructions must not result in undue confusion or some other injustice. *People v Stephens, supra,* pp 261-265.

The trial court in the case at bar refused to give the requested instruction for two reasons: (1) the two crimes did not relate to the protection of the same interests and, therefore, were not appropriately related; and (2) a rational view of the evidence did not support defendant's contention that he did not know he was assaulting a prison employee at the time.

Regarding the first reason offered by the trial court for rejecting the instruction, we are guided by the test set forth in *People v Stephens, supra,* p 262, for determining when an appropriate relationship exists between the charged offense and the misdemeanor:

" 'there must also be an "inherent" relationship between the greater and lesser offense, *i.e.,* they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser

offense is necessarily presented as part of the showing of the commission of the greater offense.' " (Citations omitted.)

We agree with defendant that the crime of assault and battery is a cognate lesser offense of assault of a prison employee, given the overlapping elements of an assault on a person. See *People v Boyd*, 102 Mich App 112, 117; 300 NW2d 760 (1980), *lv den* 412 Mich 927 (1982). We also agree with defendant that a broad interpretation of the two statutes indicates that the societal purposes are identical: the statutes were established to deter assaults on individuals. While the statute regarding assaults on prison employees affords more protection to a particular subset of individuals, the statute protects against only those assaults made upon an employee of a place of confinement by a defendant who knows the person to be an employee of the place of confinement. MCL 750.197c; MSA 28.394(3). Thus, if the evidence established that defendant was involved in an assault upon a prison employee without knowing that the individual was a prison employee, then the requested instruction on the assault and battery charge must be given. Contrary to the trial court's ruling, therefore, we find there is an inherent relationship between the two offenses which could justify the giving of the instruction on the lesser included offense.

In *People v Stephens, supra*, p 263, the Court explained that not only must there be some evidence which would justify conviction of the lesser offense but also:

" 'proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of

the greater and guilty of the lesser included offense.' " (Citations and footnote omitted.)

The defendant testified that the fight began when someone jumped him from behind. While at that point defendant did not know whether the person was an inmate or guard, he did become aware soon after that he was fighting two guards and he continued to fight. We find that the question of whether defendant knew he was assaulting two prison guards cannot be considered seriously disputed. Therefore, the trial court did not err in refusing to give the requested instruction.

V

Defendant's next argument is that his right to be present at trial was violated as a result of in-chamber conferences held by the trial court without the defendant's presence. Specifically, defendant points to those conferences concerning the jury instructions to be given and an objection to the prosecutor's closing arguments.

A criminal defendant has a specific statutory right to be present at his or her trial. MCL 768.3; MSA 28.1026. Further, this right is impliedly guaranteed by the federal and state confrontation clauses. US Const, Am VI; Const 1963, art 1, § 20; *People v Mallory,* 421 Mich 229, 246, fn 10; 365 NW2d 673 (1984).

A defendant's presence at a conference is required only where his substantial rights might be affected. *People v Mallory, supra,* p 247; *People v Clyburn,* 55 Mich App 454, 460; 222 NW2d 775 (1974). See also *People v Plozai,* 50 Mich App 131, 134; 212 NW2d 721 (1973). However, we have also stated:

"An in-chambers conference to discuss matters of proce-

dure or law attended by his counsel to which the defendant raises no objection, does not violate defendant's right to be present during his trial and does not constitute reversible error. *People v Bowman,* 36 Mich App 502; 194 NW2d 36 (1971), *lv den* 386 Mich 783 (1972); *People v Carroll,* 49 Mich App 44; 211 NW2d 233 (1973)." *People v Clyburn, supra,* p 460.

Here, we note that defendant did not object to being excluded from these conferences and that defendant's counsel was present. Therefore, we find no reversible error.

## VI

Defendant's final contention is that he was deprived of a fair trial because he was shackled while in the presence of the jury. Defendant's argument has merit.

In general, " '[f]reedom from shackling and manacling of a defendant during the trial of a criminal case has long been recognized as an important component of a fair and impartial trial' ". *People v Duplissey,* 380 Mich 100, 103; 155 NW2d 850 (1968). Further, such a procedure should be permitted only to prevent the escape of the defendant or to prevent him from injuring those in the courtroom or to secure a quiet and peaceable trial. *Id.,* 103-104.

In the case at bar, we note that the trial court ordered the defendant to be shackled out of concern for the safety of those present in the courtroom. Yet we find no compelling reason that justifies this concern.

Unlike the situation in *People v Jankowski,* 130 Mich App 143, 146-147; 342 NW2d 911 (1983), there was no evidence that the defendant had ever indicated he would not cooperate with the proceedings, no indication that defendant would attempt

to escape, and no indication that the courtroom where the trial was conducted presented any more of a security risk than other courtrooms. In fact, the trial court admitted that in all the proceedings where defendant had appeared before him, defendant "certainly conducted himself in the appropriate way". Therefore, we find that in ordering the defendant to be shackled during the jury trial the trial court abused its discretion.

Further, we are not convinced that this error was harmless beyond a reasonable doubt such that, had the error been absent, no juror would have voted for acquittal. Nor do we believe an instruction, had one been requested, would have cured the error. This is a situation where actions speak louder than words. The mere shackling of the defendant in this case impinged upon defendant's credibility by indicating that defendant was not to be trusted and prejudiced his right to a fair trial.

Reversed and remanded for proceedings not inconsistent with this decision.