# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

TERRELL DEJUAN ROCHE,

        Defendant-Appellant.

UNPUBLISHED
May 10, 2016

No. 323555
Genesee Circuit Court
LC No. 14-034889-FC

Before: MURRAY, P.J., and METER and RIORDAN, JJ.

PER CURIAM.

A jury convicted defendant of first-degree premeditated murder, MCL 750.316(1)(a); second-degree arson, MCL 750.73; and possession of a firearm during the commission of a felony, MCL 750.227b. The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to concurrent terms of life imprisonment for the murder conviction and 20 to 40 years' imprisonment for the arson conviction, to be served consecutively to a two-year term of imprisonment for the felony-firearm conviction. Defendant appeals as of right. We affirm.

A jury convicted defendant of fatally shooting his stepfather, Ralph Mathews, and setting Matthews's home on fire on October 25, 2005, in the city of Flint. The prosecution presented evidence that, after shooting Matthews once in the head and robbing him of his jewelry, defendant set Matthews's house on fire, using a Molotov cocktail, in an attempt to conceal the murder and destroy the crime scene. The prosecution presented witnesses to whom defendant had confessed his crimes and who later came forward as a result of plea deals in unrelated cases. There was also evidence that, near the time of the offense, defendant went to the home of a friend and asked for a change of clothes because he had committed a robbery. Defendant's original clothing was later recovered and Matthews's DNA was found on defendant's jeans. The defense theory at trial was that the witnesses were unbelievable and had motives to lie and that the police investigation was flawed and unreliable.

## I. IMPROPER IMPEACHMENT

Defendant argues that he is entitled to a new trial because the trial court allowed the prosecutor to improperly impeach two prosecution witnesses: defendant's brother, Michael Roche; and Javon Meeks. We disagree. Defendant did not object to the introduction of Michael's video-recorded statement on the basis that it was improper impeachment, as he now

-1-

argues. He only argued that the video was "inflammatory." With regard to the impeachment of Meeks, defendant objected only on the ground that the prosecutor "was testifying" when she read his prior inconsistent statement. An objection on one ground is insufficient to preserve an appellate challenge based on a different ground. *People v Bulmer*, 256 Mich App 33, 35; 662 NW2d 117 (2003). Therefore, defendant's claims are unpreserved. We review unpreserved claims of evidentiary error for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 752-753, 763-764; 597 NW2d 130 (1999).

"Extrinsic evidence of a prior inconsistent statement can be used to impeach but it cannot be used to prove the truth of the matter asserted, unless, of course, it falls within a hearsay exception." *People v Jenkins*, 450 Mich 249, 273; 537 NW2d 828 (1995). MRE 613(b) provides that extrinsic evidence of a witness's prior inconsistent statement is admissible if the witness is allowed to explain or deny the statement and an adverse party is given an opportunity to examine the witness. To satisfy MRE 613(b), "the proponent of the evidence must elicit testimony inconsistent with the prior statement, ask the witness to admit or deny making the first statement, then ask the witness to admit or deny making the later, inconsistent statement, allow the witness to explain the inconsistency, and allow the opposite party to cross-examine the witness." *Barnett v Hidalgo*, 478 Mich 151, 165; 732 NW2d 472 (2007). The prosecution may impeach its own witnesses, even when the prior inconsistent statement tends to directly inculpate the defendant. *People v Kilbourn*, 454 Mich 677, 682; 563 NW2d 669 (1997). The prior inconsistent statement may not be used as substantive evidence of the defendant's guilt, but only to impeach the witness's testimony. *Id.*

The prosecutor established a proper foundation for the impeachment evidence and, because Michael testified at trial inconsistently with his prior statements, the prosecution was permitted to impeach him with the statements. When the prosecutor asked Michael what defendant told him about the homicide, he stated, "Not much. He was pretty much in the same frame of mind as I. We wanted to find out what happened to [the victim] and get to the bottom of it so to speak." Michael acknowledged that he had given a statement to the police concerning his conversation with defendant, but claimed that everything he told the police was only "what I heard . . . [f]rom other sources." By first saying "[n]ot much" and then denying that he had obtained the information he provided directly from defendant, Michael testified inconsistently with his entire police statement. In response to additional questioning, Michael continued to deny, or could not recall, making several specific statements concerning defendant admitting that he shot Matthews, defendant owning a gun, and defendant taking money, jewelry, and drugs from Matthews. Michael was afforded the opportunity to explain the inconsistencies, and defendant had the opportunity to cross-examine him regarding his prior inconsistent statements. Further, contrary to defendant's argument, the prosecutor did not present the prior statement as substantive evidence of defendant's guilt, i.e., to prove the truth of the matter asserted. In closing argument, the prosecutor told the jury that "You, the jury, get to decide was [Michael] lying then or was he lying now," and her arguments were focused on Michael's statement only as it pertained to his credibility. Indeed, during closing argument, defense counsel also noted Michael's video-recorded statement and told the jury, "I agree with the prosecutor when she says it's up to you to make the determination as to whether he was lying then or lying now." The statement comported with MRE 613(b) and was admissible.

Defendant argues that the prosecutor was also allowed to introduce substantive hearsay evidence under the guise of impeachment during Meeks's testimony. Meeks initially testified that defendant had been "hanging" with him for most of the day, and denied that defendant told him anything about Matthews's death. Meeks acknowledged that he had given a prior statement to Former Flint Police Sergeant Michael Angus (later assigned to an FBI task force) regarding defendant and Matthews, but denied that he told the sergeant anything that defendant told him. The following exchange then occurred:

> *Q.* Well, if you looked at your statement, would that refresh your memory?
>
> *A.* Yes.
>
> * * *
>
> *Q.* Okay. What did you tell the FBI agent he had?
>
> *A.* I told them he had jewelry that didn't belong to him which was watches, and rings, and earrings.
>
> *Q.* Well, that's not what you said. Do you need to see your statement again?
>
> *A.* That's what I told them. That what—
>
> *Q.* Do you need to see your statement? Did you tell them that Roche had a black handgun in his possession during the above conversation, and you also saw [defendant] with a pinky ring, a bracelet, a package of cocaine that Roche said he took from Matthews' house?
>
> *A.* No.
>
> *Q.* Do you remember telling the FBI agent that?
>
> *A.* No.
>
> *Q.* You didn't tell—you're saying you didn't tell the FBA agent that.
>
> *A.* No. If I did, I told a story.
>
> *Q.* We've got a lot of that going around. Did you tell the FBI agent that Roche told you that him [sic] and some unidentified subject went to Matthews' house, knocked on the door. Matthews asked who was knocking, and Roche said it's me, Terrell. As Matthews was opening the door, Roche pushed the door in, pointed the gun at Matthews. Matthews told Roche to take what he needed. Roche kept the gun pointed at Matthews while the unidentified subject went through the house looking for stuff to take. The unidentified subject found some jewelry. Roche gave the gun to the unidentified subject to keep on Matthews, and

-3-

then Roche went through the house and found cocaine. Roche then took the gun back from the unidentified subject and put it to Matthews head. Roche shot Matthews. Roche said I slumped him. Roche then poured gas around and lit the place on fire.

> *Defense counsel*: I'll just object to the prosecutor testifying. This is not a certified transcript. It was not under oath.

> *The prosecutor*: It's a statement that he made to an FBI agent.

> *The court*: I think she's going to ask whether or not he made that statement.

> *The prosecutor*: That is exactly what I'm doing.

> *Q*. Did you make that statement to the FBI agent?

> *A*. I don't remember that.

Once Meeks testified inconsistently with his prior statement, the prosecutor was permitted to impeach him with the prior inconsistent statement. MRE 613(b); *Jenkins*, 450 Mich at 256. Defendant fails to specifically argue how the impeachment was improper, other than stating that the prosecutor "essentially read the statement into the record." The record shows that the prosecutor's questions comported with MRE 613(b).

Moreover, to the extent that the impeachment could be considered improper, defendant has not established that any error affected his substantial rights, i.e., affected the outcome of the trial. *Carines*, 460 Mich at 763. Apart from Michael and Meeks, other witnesses provided crucial evidence against defendant. There was evidence that, near the time of the offense, defendant went to a friend's house, which was in the same neighborhood as Matthews's house, and asked for a change of clothing because he had robbed a drug addict. Defendant's jeans, which he left at the friend's house, had a bloodstain that matched Matthews's DNA. Further, defendant made statements to at least three other witnesses that linked him to Matthews's murder. Darryl Scott testified that on the day of the offense, defendant told him that he "was going to get some money" from his "dad's house." Xavier Turner testified that defendant told him that he shot Matthews when he went to his house "to rob" him, and that he tried to "burn the house down." Paki Bonner testified that defendant told him that he shot Matthews when he went to rob him, that he took "some jewelry" and "a bit of dope," and that he tried to "burn the house up." In light of this other evidence linking defendant to the charged crimes, any error arising from the challenged impeachment evidence did not affect defendant's substantial rights.

## II. OPINION TESTIMONY

Defendant argues that he was denied a fair trial when the prosecutor improperly elicited Sergeant Angus's opinion testimony that defendant was guilty of murder. Again, we disagree. As defendant acknowledges, he did not object to Sergeant Angus's testimony. Therefore, we review this unpreserved claim of error for plain error affecting substantial rights. *Carines*, 460 Mich at 763-764.

During the prosecutor's direct examination of Sergeant Angus, she elicited how Sergeant Angus had become involved with the case and what he did at the crime scene. In response to defense counsel's questions on cross-examination, the sergeant testified that he did not interview any witnesses on the night of the crime, and later interviewed people who stated that Matthews was a drug dealer. On redirect examination, the prosecutor elicited that Matthews was not a target in the so-called "Howard Boys" investigation; rather, Matthews's homicide case was brought to the sergeant because of the suspects involved. On re-cross-examination, defense counsel asked how many suspects were involved and requested, "aside from Mr. Roche . . . give me the other suspects' names." Sergeant Angus explained that by the time he took over the case, there was not another suspected shooter, although there was a person who was suspected to have been involved with possessing property taken from Matthews. Defense counsel asked, "[I]f I had a report that lists other people as suspects, those would be wrong? There was [sic] never any other suspects in this case?" Defense counsel referred to Declyde Brewton and Leon Gillis. On appeal, defendant contends that in response to the prosecutor's questions on further redirect examination, Sergeant Angus impermissibly expressed his opinion regarding defendant's guilt in the emphasized portions of the following exchange:

> *Q.* Okay. Now, each one of those individuals, some that are on trial right now over at the feds, had different roles, did different things, might have done multiple things, correct?
>
> *A.* Yes. They support each other.
>
> *Q.* And now *in this particular case you have said a couple of times that there was a suspect that was the shooter? Who was that?*
>
> *A. Terrell Roche.*
>
> * * *
>
> *Q.* Now, Leon Gillis, is he part of the Howard Boys?
>
> *A.* Yes. He's on trial.
>
> *Q.* Declyde Brewton, is he part of Howard Boys?
>
> *A.* Yes, he is.
>
> *Q.* So, would it surprise you to know that their name[s] might be on a lab report and DNA got sent to the lab to compare in a case like this?
>
> *A.* No, because I put it there.
>
> *Q.* Okay, and you would have put it there on a number of other cases as well. Is that correct?
>
> *A.* That's correct. Just because they were with each other many times.

*Q.* Okay, and that's what you were doing when you were over at the FBI. That was your focus, Howard Boys, Howard Estates, that area. That gang was right there. That's what you were doing.

*A.* Correct.

*Q.* Okay, and *in this particular case you were investigating the murder of Ralph Matthews.*

*A.* *Yes.*

*Q.* *And who did it?*

*A.* *Terrell Roche.*

*Q.* You weren't investigating Ralph Matthews as a drug dealer. Is that correct?

*A.* No. [Emphasis added.]

It is improper for a witness to provide an opinion regarding the guilt or innocence of a criminal defendant because that is a determination for the trier of fact. *People v Moreno*, 112 Mich App 631, 635; 317 NW2d 201 (1981); *People v Bragdon*, 142 Mich App 197, 199; 369 NW2d 208 (1985). However, the challenged testimony did not constitute plain error. The gist of the sergeant's testimony was that defendant was the suspected shooter in the context of explaining what and whom he was investigating in this case. Defendant fails to mention his attorney's cross-examination, but it is apparent that the prosecutor's questions and the challenged testimony were in response to defense counsel's implication that there were other suspects revealed during the police investigation who were not on trial. As the prosecution acknowledges, the prosecutor "could have phrased the question in a better fashion," but it is apparent that the questions were not asked in an attempt to persuade the jury to convict defendant based on the sergeant's opinion of the defendant's guilt. Regardless, to the extent that the challenged testimony could be considered improper, defendant has not established that any error affected his substantial rights. *Carines*, 460 Mich at 763. Because Sergeant Angus, the officer in charge, was called as a prosecution witness and a criminal prosecution was instituted against defendant, the jury would have understood that the sergeant considered defendant as the suspected shooter in Matthews's murder, even without the disputed testimony. See *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). The trial court instructed the jury that it was to decide whom and what to believe. Also, the trial court instructed the jury that defendant was presumed innocent, that the prosecutor had to prove the facts beyond a reasonable doubt, and that testimony of police officers should be judged by the same standards used to evaluate the testimony of any other witness. Juries are presumed to follow their instructions. *People v Breidenbach*, 489 Mich 1, 13; 798 NW2d 738 (2011). The trial court's instructions protected defendant's substantial rights. In light of all the circumstances, including the substantial additional evidence of defendant's guilt, the testimony did not affect the outcome of the proceedings. *Carines*, 460 Mich at 763.

### III. PROSECUTORIAL ERROR

Defendant argues that prosecutor erred by repeatedly eliciting irrelevant and unduly prejudicial testimony, thereby denying him a fair trial. We disagree. As defendant acknowledges, defense counsel objected only once to the "Howard Boys" testimony; this occurred during Michael Roche's testimony. Defendant did not, however, base his objection on the prosecutor's conduct of eliciting the evidence. *People v Unger*, 278 Mich App 210, 234-235; 749 NW2d 272 (2008); *Bulmer*, 256 Mich App at 35. Defendant also did not object to the testimony regarding the caliber of the bullet. Therefore, defendant's claims of prosecutorial error are not preserved, and our review is limited to ascertaining whether plain error occurred that affected defendant's substantial rights. *Carines*, 460 Mich at 763-764.[1] We will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

### A. GENERAL TESTIMONY ABOUT THE HOWARD BOYS

Defendant contends that prosecutor repeatedly elicited impermissible testimony about the Howard Boys gang and defendant's affiliation with that gang. When a defendant's prosecutorial error argument is "essentially an evidentiary issue framed as prosecutorial misconduct," this Court determines whether the prosecutor acted in good faith. *Dobek*, 274 Mich App at 70-71. "A prosecutor's good-faith effort to admit relevant evidence does not constitute misconduct." *Id*. at 70. Generally, all relevant evidence is admissible unless otherwise prohibited by the rules of evidence or the state or federal constitutions. MRE 402; *People v Yost*, 278 Mich App 341, 355; 749 NW2d 753 (2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. "A trial court admits relevant evidence to provide the trier of fact with as much useful information as possible." *People v Cameron*, 291 Mich App 599, 612; 806 NW2d 371 (2011). However, even if evidence is relevant, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ." MRE 403.

The prosecutor's introduction of evidence related to the Howard Estates and the Howard Boys was not intended to establish "guilt by association," but rather was relevant to the issues in the case. While defendant highlights the "repeated" mention of the Howard Boys, in most cases he ignores the context in which the testimony was elicited, which was part of the complete picture that the prosecution was trying to give the jury. In particular, the testimony regarding the Howard Estates, the Howard Boys, and the pending Howard Boys federal cases was relevant to the credibility of several prosecution witnesses and to explain the development of defendant as a suspect during the police investigation. The crimes occurred in the Howard Estates neighborhood in 2005, where Matthews, defendant, and several prosecution witnesses resided. Sergeant Angus first testified in general terms regarding how his investigation of federal cases involving the Howard Boys, who reside in the Howard Estates, led him to the witnesses in this

---

[1] Defendant himself lists plain error as the appropriate standard of review.

case. This testimony, offered in conjunction with details of the investigation into Matthews's death, was relevant to explain why a particular group of witnesses did not come forward immediately and identify defendant as the shooter. Otherwise, it might have appeared incredible that multiple independent witnesses decided to come forward at the same time, several years after the crimes. Further, in exchange for their testimony in this case, many of the witnesses were offered plea deals or other consideration in connection with the federal cases involving the Howard Boys, which was directly relevant to their credibility. The credibility of witnesses is a material issue, *People v Mills*, 450 Mich 61, 72; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995), and the interests and biases of witnesses are always relevant, *People v Layher*, 464 Mich 756, 764; 631 NW2d 281 (2001). Thus, testimony that the crimes took place in the Howard Estates, and that several of the witnesses ultimately came forward and testified in exchange for consideration in federal cases involving the Howard Boys, who resided in the Howard Estates, was relevant to assist the jury in its evaluation of witness credibility. As the trial court appropriately observed, "I just don't know how you could have tried this case with the witnesses who testified without having that information revealed."

Further, we are not persuaded that the evidence was required to be excluded under MRE 403 because it was unduly prejudicial. Under MRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. *Cameron*, 291 Mich App at 610. MRE 403 is not intended to exclude damaging evidence, because any relevant evidence will be damaging to some extent. *Mills*, 450 Mich at 75. Instead, under the balancing test of MRE 403, this Court must first decide if the evidence was unfairly prejudicial, and then "'weigh the probativeness or relevance of the evidence' against the unfair prejudice" to determine whether any prejudicial effect substantially outweighed the probative value of the evidence. *Cameron*, 291 Mich App 611 (citation omitted). Unfair prejudice exists where there is "a danger that marginally probative evidence will be given undue or pre-emptive weight by the jury" or "it would be inequitable to allow the proponent of the evidence to use it." *Mills*, 450 Mich at 75-76; (citation and quotation marks omitted); see also *People v McGuffey*, 251 Mich App 155, 163; 649 NW2d 801 (2002). Unfair prejudice "refers to the tendency of the proposed evidence to adversely affect the objecting party's position by injecting considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock." *Cameron*, 291 Mich App 611 (citations and quotation marks omitted). Here, we are not persuaded that the jury would not have been able to rationally weigh the evidence.[2] Because the evidence at issue was relevant and assisted the trier of fact in evaluating the credibility of the witnesses, no basis exists to conclude that the prosecutor offered this evidence in bad faith.

### B. DEFENDANT'S DIRECT INVOLVEMENT WITH THE HOWARD BOYS

Defendant argues that in the following exchange during the direct examination of Michael Roche, the prosecutor denied him a fair trial when she specifically asked if defendant "was involved with the Howard Boys":

---

[2] Contrary to defendant's statement in his brief, the record discloses that the prospective jurors were asked if any were familiar with the Howard Estates area and related federal cases.

*Q*. Was [defendant] involved with Howard Estates, Howard Boys?

*Defense counsel*: Objection. There's been no testimony directly linking Mr. Roche directly to any Howard, and Howard Estate first of all is vague, and if we're referring to Howard Boys, again there's been no testimony in this trial directly linking him to the Howard Boys' case.

*The prosecutor*: I think there was.

*The trial court*: Well, I think Sergeant Angus gave that testimony, and I think—

*The prosecutor*: Darrell Scott.

*The court*: Yeah. I'll overrule the objection.

*A*. What was your question again?

*Q*. My question was you want us to believe that he had no reason to steal dope from Ralph when the fact of the matter is he was part of a group that sold dope.

*A*. I cannot speculate on who he was associated with. Since you brought the video up, the video clearly states that I had no idea what he was doing because I had been in the corporate world for the past 10, 12 years.

*Q*. You had no idea what he was doing, correct?

* * *

*A*. No.

The prosecutor was apparently attempting to respond to Michael's prior testimony, on cross-examination, that defendant did not use drugs and therefore would have no reason to steal drugs from Matthews. Although the trial court overruled defense counsel's evidentiary objection, Michael did not confirm that defendant was involved with the Howard Boys. No other question was asked about defendant being involved with the Howard Boys, and the prosecutor did not refer to defendant being a part of the Howard Boys during closing argument. Even if the prosecutor erred in asking the challenged question, defendant cannot establish that it affected his substantial rights. Again, Michael did not answer the prosecutor's question in the affirmative, and there was no other direct evidence presented during trial that defendant was a member of the Howard Boys. Moreover, in its initial instructions, the trial court instructed the jury that the lawyers' questions "are not evidence. Only the answers are evidence. You should not think that something is true just because one of the lawyers asks questions that assumes or suggests that it is true." The court reiterated this instruction in its final instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). As previously observed, juries are presumed to follow their instructions. *Breidenbach*, 489 Mich at 13.

-9-

### C. GANG IMPLICATIONS IN THE QUESTIONING OF TWO WITNESSES

Defendant highlights that, in response to the prosecutor's questions, Scott testified that he was given consideration in the Howard Boys case and that he knew defendant because they were from the same neighborhood. Contrary to defendant's argument, Scott's mere testimony that he and defendant were both from the Howard Estates neighborhood did not implicate defendant as being a member of the Howard Boys. Indeed, upon further questioning, Scott testified that he did not really hang around with defendant, but would see defendant because of his friendship with defendant's "baby mama." Defendant similarly argues that Turner's testimony that neither he nor Turner had legal jobs was designed to align him with Turner and to portray him as a violent gang member. Apart from the fact that the testimony, standing alone, does not equate defendant with being a member of the Howard Boys, Michael Roche testified that defendant had "several jobs." Defendant's father also testified that defendant had "sputtered with jobs." Defendant has not established that the prosecutor's questions constituted plain error affecting substantial rights.

### D. USE OF THE PHRASE "LET'S JUST GET INTO IT"

After defense counsel cross-examined Sergeant Angus about other possible suspects in this case, who could be involved with the Howard Boys, the prosecutor began her redirect examination with the phrase, "Well, I guess *let's just get into it*." (Emphasis added.) The prosecutor then questioned Sergeant Angus about his investigation and who the suspects were. Defendant fails to persuasively explain how the prosecutor's use of the emphasized transitional phrase conveyed that he was a member of the Howard Boys, or how the use of the phrase was improper. *Goolsby v Detroit*, 419 Mich 651, 655 n 1; 358 NW2d 856 (1984) (as the appellant, defendant is required to do more than merely announce his position and leave it to this Court to discover and rationalize the basis for his claim). Therefore, defendant has not demonstrated that the prosecutor's use of the phrase was error, let alone plain error.

### E. TESTIMONY REGARDING THE CALIBER OF THE BULLET

Lastly, defendant argues that the relevancy of evidence regarding the discrepancy in the caliber of the bullet, i.e., whether it was a .38 or .9 caliber, was "questionable at best," and therefore, the prosecutor should not have presented it. Given the evidence that Michael Roche told the police that defendant had a .38 caliber gun, the caliber of the slug was certainly relevant to either the prosecution or the defense, depending on what the jury chose to believe. MRE 401. Because there is no basis to conclude that the prosecutor offered this relevant evidence in bad faith, there was no misconduct.

### IV. ADMISSION OF EVIDENCE

Next, defendant argues that the trial court abused its discretion by admitting the previously discussed "gang-related" testimony and Sergeant Angus's testimony that defendant was guilty, and by failing to *sua sponte* give a limiting instruction after allowing the admission of Michael Roche's videotaped statement. We review a trial court's decision to admit evidence for an abuse of discretion. *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). A

-10-

trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Yost*, 278 Mich App at 379.

In presenting this issue, defendant rehashes arguments discussed in other issues. First, defendant argues that the trial court erred in admitting "gang-related" testimony. This evidentiary challenge is largely a rehashing of defendant's argument, discussed in section III, *supra*. As indicated, the general testimony regarding the Howard Boys investigation and the related federal cases and plea deals was relevant to the credibility of the prosecution witnesses and to explain the development of defendant as a suspect during the police investigation, MRE 401, and was not unduly prejudicial, MRE 403. Further, although the trial court overruled defendant's objection regarding the prosecutor asking Michael if defendant was in the Howard Boys, Michael did not answer the question affirmatively. Because the prosecutor's question was not evidence, no "evidence" that defendant was a Howard Boy was admitted during this exchange. Defendant argues that "the prosecutor's questioning of Sergeant Angus about who committed the crime was so clearly inadmissible, the judge should have struck the testimony." Other than referring to his argument addressed in section II, *supra*, defendant does not offer any new argument. Therefore, we decline to reanalyze the same issue here. *Goolsby*, 419 Mich at 655 n 1. Lastly, referring to his prior argument that we have addressed in section I, *supra*, defendant argues that he is entitled to a new trial because the trial court failed to instruct the jury *sua sponte* on the limited use of Michael's video-recorded statement. The trial court, however, is under no obligation to give a limiting instruction *sua sponte*. *People v Rice (On Remand)*, 235 Mich App 429, 444; 597 NW2d 843 (1999).

In light of the foregoing, defendant is not entitled to a new trial based on a trial court error in the admission of evidence.

## V. EFFECTIVE ASSISTANCE OF COUNSEL

Defendant raises two ineffective-assistance-of-counsel claims, both of which are based on previously discussed evidence. Because he failed to raise these claims in the trial court in a motion for a new trial or request for an evidentiary hearing, our review of these issues is limited to mistakes apparent from the record. *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973); *People v Sabin (On Second Remand)*, 242 Mich App 656, 658-659; 620 NW2d 19 (2000). To establish ineffective assistance of counsel, defendant first must show that counsel's performance was below an objective standard of reasonableness; in doing so, defendant must overcome the strong presumption that counsel's assistance was sound trial strategy. *People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011). Second, defendant must show that, but for counsel's deficient performance, it is reasonably probable that the result of the proceeding would have been different. *Id*. at 290. Effective assistance of counsel is presumed and defendant bears a heavy burden of proving otherwise. *People v Effinger*, 212 Mich App 67, 69; 536 NW2d 809 (1995). "Reviewing courts are not only required to give counsel the benefit of the doubt with this presumption, they are required to 'affirmatively entertain the range of possible' reasons that counsel may have had for proceeding as he or she did." *People v Gioglio (On Remand)*, 296 Mich App 12, 20; 815 NW2d 589 (2012) (citation omitted), vacated in part on other grounds 493 Mich 864 (2012). "[A] reviewing court must conclude that the act or omission of the defendant's defense counsel fell within the range of reasonable professional conduct if, after affirmatively entertaining the range of possible reasons for the act or omission

-11-

under the facts known to the reviewing court, there might have been a legitimate strategic reason for the act or omission." *Id*. at 22-23.

Defendant argues that defense counsel was ineffective for failing to object to the previously discussed evidence that defendant characterizes as irrelevant and prejudicial gang-related testimony. As indicated previously, the testimony regarding the Howard Boys was relevant, MRE 401, and not unduly prejudicial, MRE 403. Counsel is not ineffective for failing to raise a meritless objection. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Further, defendant has not overcome the strong presumption that defense counsel's decision to abstain from objecting constituted reasonable trial strategy. *Gioglio (On Remand)*, 296 Mich App at 20. Counsel may have viewed the evidence of certain prosecution witnesses' gang affiliation as more favorable than harmful, because it might cause the jury to discredit the witnesses' testimony because of their gang affiliation. In closing argument, defense counsel challenged the credibility of those witnesses, repeatedly referring to them as "jailhouse witnesses" and "jailhouse snitches," and highlighted their plea agreements as a motivation to testify falsely against defendant. The apparent tactical decision is further supported by counsel's comments during a conference indicating that she was familiar with the Howard Boys issue and "took great pains" to ensure that defendant was not implicated in any Howard Boys' activities. Decisions about what arguments to make and what evidence to present are matters of trial strategy, *People v Rockey*, 237 Mich App 74, 76; 601 NW2d 887 (1999), and "this Court will not second-guess defense counsel's judgment on matters of trial strategy." *People v Benton*, 294 Mich App 191, 203; 817 NW2d 599 (2011).

We also reject defendant's argument that defense counsel was ineffective for failing to object to Sergeant Angus's previously discussed testimony that defendant was the suspected shooter. Defendant's argument is that "[a]llowing this highly irrelevant and/or unfairly prejudicial testimony to come in without comment cannot be considered sound strategy." As previously explained, the introduction of this evidence was not plain error and did not affect defendant's substantial rights. Defendant has not shown that he was prejudiced by the references. *Armstrong*, 490 Mich at 289-290. Thus, reversal is unwarranted.

## VI. DEFENDANT'S STANDARD 4 BRIEF

In a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that he was denied his right of confrontation when the prosecution was allowed to present testimonial hearsay statements made by an analyst who did not testify, through the testimony of another analyst, Michigan State Police Lieutenant Ronald Crichton, who did not perform the analysis and disagreed with the original analyst's results. Defendant did not raise this constitutional issue in the trial court. Accordingly, we review defendant's unpreserved constitutional claim for plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

Both the United States Constitution and the Michigan Constitution guarantee a criminal defendant the right to be confronted with the witnesses against him. *People v Nunley*, 491 Mich 686, 697; 821 NW2d 642 (2012); US Const, Am VI; Const 1963, art 1, § 20. The Confrontation Clause prohibits the admission of out-of-court statements that are testimonial in nature unless the declarant is unavailable at trial and the defendant had a prior opportunity to cross-examine the

declarant. *People v Chambers*, 277 Mich App 1, 10; 742 NW2d 610 (2007). Reports memorializing the work performed by laboratory analysts when carrying out forensic duties are testimonial statements subject to the requirements of the Confrontation Clause. *Bullcoming v New Mexico*, 564 US ___ ; 131 S Ct 2705, 2717; 180 L Ed 2d 610 (2011); *Melendez-Diaz v Massachusetts*, 557 US 305, 310-311; 129 S Ct 2527; 174 L Ed 2d 314 (2009).

A criminal defendant's right of confrontation, however, may be waived by trial counsel where the decision constitutes reasonable trial strategy, which is presumed, and the defendant does not object on the record. *People v Buie*, 491 Mich 294, 315; 817 NW2d 33 (2012). Neither defendant nor his counsel objected on the record, and the record supports that defense counsel's decision to abstain from objecting constituted reasonable trial strategy. On direct examination, Lieutenant Crichton testified about matters in Ronald Ainsley's report and his disagreement with Ainsley's conclusion regarding the caliber of the bullet used to shoot Matthews. On cross-examination, defense counsel moved to admit Ainsley's report and delved into a vigorous cross-examination in which he elicited that Lieutenant Crichton observed the bullet for the first time at trial, that he was Ainsley's supervisor when Ainsley prepared the report containing information with which he disagreed, and that the report had undergone a technical review by another analyst and an administrative review by Lieutenant Crichton. In other responses to defense counsel's questions, Lieutenant Crichton acknowledged that the police laboratory makes mistakes and that a mistake was made in this case that was not discovered until trial.

Defense counsel's strategy is apparent from her closing argument in which she used the lieutenant's testimony and Ainsley's report to challenge not only the credibility of Lieutenant Crichton, but also to discredit the police investigation. Because counsel's conduct regarding the issue was reasonable trial strategy and defendant did not object on the record, defendant, through the actions of counsel, waived his right of confrontation. *Buie*, 491 Mich at 315; *People v Carter*, 462 Mich 206, 215-216; 612 NW2d 144 (2000). Defendant's waiver extinguished any error. *Id*. at 216.

Affirmed.


/s/ Christopher M. Murray
/s/ Patrick M. Meter
/s/ Michael J. Riordan

-13-